# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | |
|---|---|
| JOHN DOE ONE; JOHN DOE TWO; and JOHN DOE THREE, on behalf of themselves and all similarly situated individuals, | )<br>)<br>) **CIVIL ACTION**<br>) |
| Plaintiffs, | ) **FILE NO.  2:18-cv-238**<br>) |
| v. | ) **CHIEF JUDGE EDMUND A.**<br>) **SARGUS, JR.** |
| CAREMARK, L.L.C.; FISERV, INC.; FISERV SOLUTIONS, LLC; and DEFENDANTS DOES 1–10, | ) **Magistrate Judge Chelsey M. Vascura**<br>)<br>)<br>) |
| Defendants. | )<br>) |

## DEFENDANT CAREMARK, L.L.C.'S MOTION TO DISMISS
## THE AMENDED COMPLAINT

Defendant Caremark L.L.C. ("Caremark") moves to dismiss the Amended Class Action Complaint (ECF 38) of Plaintiffs John Does One, Two and Three. Caremark relies on the attached Memorandum of Law in support of this Motion.

[SIGNATURE ON FOLLOWING PAGE]

Respectfully submitted, this 26th day of June, 2018.

/s *Robert G. Cohen*
Robert G. Cohen (0041707)
KEGLER BROWN HILL + RITTER CO., LPA
65 East State Street, Suite 1800
Columbus, Ohio 43215
Phone: 615-462-5492
Fax: 614-462-2634
rcohen@keglerbrown.com

Kristine M. Brown (admitted *pro hac vice*)
Donald M. Houser (admitted *pro hac vice*)
Matthew L.J.D. Dowell (admitted *pro hac vice*)
ALSTON & BIRD LLP
1201 West Peachtree Street
Atlanta, Georgia 30309
Phone: 404-881-7434
Fax: 404-881-7777
kristy.brown@alston.com
donald.houser@alston.com
matt.dowell@alston.com

*Attorneys for Caremark L.L.C.*

## MEMORANDUM OF LAW IN SUPPORT OF CAREMARK L.L.C.'S MOTION TO DISMISS

Plaintiffs' Amended Class Action Complaint, ECF 38 ("Amended Complaint" or "Am. Compl.") should be dismissed because Plaintiffs fail to state any plausible claim for relief.  Each of Plaintiffs' claims depends on the alleged disclosure of protected information to third parties.  Caremark established in its initial Motion to Dismiss that Plaintiffs failed to plead this requisite element.  The amendment changes nothing in that regard – Plaintiffs still do not plausibly allege that any protected information was actually disclosed to a third party.  This shortcoming dooms Plaintiffs' claims and requires dismissal of their claims against Caremark in their entirety.

Plaintiffs' claims also fail because the legal causes of action Plaintiffs have chosen to assert simply do not apply to Caremark.  More specifically, Plaintiffs' *Biddle* claim in Count I of the Amended Complaint only applies to physicians and hospitals.  Plaintiffs cannot and do not allege Caremark is a physician or hospital.  Count II fails for similar reasons – the statute does not apply because Caremark is not a government entity and because Caremark provides pharmacy benefits services, not healthcare services.  Count II also fails because Plaintiffs fail to allege facts showing that Caremark knowingly violated Ohio's AIDS disclosure statute.  Finally, Plaintiffs' remaining Counts should be dismissed because they do not assert independent causes of action; they are subsumed in – and are otherwise duplicative of – Plaintiffs' *Biddle* claim and fail for the same reasons that claim fails.  For these reasons, and as set forth more fully below, Plaintiffs' claims against Caremark should be dismissed.

## I. SUMMARY OF AMENDED COMPLAINT ALLEGATIONS[1]

Plaintiffs allege they are members of the Ohio HIV Drug Assistance Program ("OHDAP"). *See* Am. Compl. ¶¶ 2-4. In 2017, Caremark, L.L.C. ("Caremark") entered into an agreement with the State of Ohio whereby Caremark would serve as the pharmacy benefits manager for OHDAP. *Id.* ¶ 5. Plaintiffs allege that the "agreement resulted in [Caremark] being responsible" for sending letters containing membership cards and other information to "an estimated 6,000 participants in OHDAP." *Id.* ¶ 18. The letters were mailed in envelopes with glassine windows, and above the addressee information, the program identification number "PM 6402 HIV" was allegedly visible. *Id.* ¶ 19. Plaintiffs allege that they each received the letter in August 2017. *Id.* ¶¶ 2-4.

Plaintiffs filed this lawsuit more than six months later, asserting common law and statutory claims based on an alleged "disclosure" of protected information. *See* ECF 1. Plaintiffs amended their original complaint after Defendants moved to dismiss on the grounds that, *inter alia*, Plaintiffs failed to allege that their HIV status was disclosed to a third party. In the Amended Complaint, Plaintiffs tack on the conclusory allegation that their protected health information has been disclosed to Fiserv and the United State Postal Service ("USPS"), presumably because those entities were involved in the delivery of the letters. *See id.* ¶¶ 45-46. But even with this amendment, Plaintiffs still fail to allege any facts making it plausible that anyone other than themselves saw their respective letters and read the program identification number, much less that anyone – including any employee of Fiserv or the USPS – learned their HIV status as a result of

---

[1] Caremark summarizes the allegations in the Amended Complaint because they must be taken as true for purposes of this Motion. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Caremark does not, however, concede the veracity of the Amended Complaint's allegations and reserves the right to challenge them.

that information.  Plaintiffs do not allege, for instance that their letters were sent to the wrong address or received by a third party.

Instead, Plaintiffs base their claims on speculation and possibility – that a third party *could have* seen the program identification number, read it, and then concluded that they were HIV positive.  More specifically, Plaintiff John Doe One alleges that he is "concerned that members of his local community have or will learn of his HIV status" (*id.* at ¶ 31(a)), but does not identify anyone who has actually learned of his HIV status as a result of the letter at issue.  Plaintiff John Doe Two "fears the stigma that would result from the disclosure of his HIV status" (*id.* at ¶ 31(b)), but does not identify any actual disclosure or stigma.  Plaintiff John Doe Three is concerned that friends and relatives "would have seen this mailing" (*id.* at ¶ 31(c)), but does not identify anyone who actually saw the "PM 6402 HIV" code, much less that someone learned his HIV status after seeing that information.

## II.     STANDARD OF REVIEW

Caremark moves to dismiss under Rule 12(b)(6) for failure to state a claim.  This Court should dismiss Plaintiffs' claims if Plaintiffs fail to plead sufficient allegations "to raise . . . [their] right to relief above the speculative level."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  This requires "more than labels and conclusions" (*id.*), and "an unadorned, the-defendant-unlawfully-harmed-me accusation" will not do.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  A complaint "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."  *Id.* at 679 (internal quotation marks and citation omitted).  In short, Plaintiffs must allege facts that suggest more than the "mere possibility of misconduct."  *Id.*

### III. ARGUMENT AND CITATION TO AUTHORITIES

### A. Plaintiffs Do Not Plausibly Allege That Caremark Disclosed Protected Information.

Plaintiffs' claims in Counts I and II require them to prove that Caremark disclosed information protected by Ohio law to third parties:[2]

- In Count I, Plaintiffs seek to recover for the alleged "unauthorized, unprivileged disclosure" of their HIV status. Am. Compl. ¶¶ 42-49. This claim is based on the tort for breach of confidence announced in *Biddle v. Warren General Hospital*, 715 N.E.2d 518 (Ohio 1999), which creates liability (in relevant part) for the "unauthorized, unprivileged **disclosure to a third party** of nonpublic medical information." *Id.* at 523 (emphasis added).

- In Count II, Plaintiffs seek to recover for the alleged violation of Ohio's AIDS disclosure statute (Am. Compl. ¶¶ 50-57), which (in relevant part) prohibits certain persons from "**disclos[ing]**" the identity of individuals diagnosed with AIDS or an "AIDS-related condition." R.C. § 3701.243(A)(3) (emphasis added).

---

[2] Plaintiffs cite and implicitly refer to the Health Insurance Portability and Accountability Act (HIPAA) Privacy Rule and its protection of Personal Health Information (or PHI). *See* Am. Compl. ¶¶ 14, 18–20, 23–26, 28, 31. Plaintiffs also appear to request relief under HIPAA when they ask for an injunction requiring Caremark to notify the U.S. Department of Health and Human Services Office for Civil Rights (the agency that enforces HIPAA's Privacy Rule) about the alleged disclosures. *Id.* at page 25. But it is "beyond dispute that HIPAA itself does not create an express or implied private right of action for violations of its provisions." *Sheldon v. Kettering Health Network*, 40 N.E.3d 661, 670 (Ohio Ct. App. 2015); *see also OhioHealth Corp. v. Ryan*, No. 10AP-937, 2012 WL 68733, at *4 (Ohio Ct. App. 2012) ("HIPAA does not allow a private cause of action, according to Ohio law."). Plaintiffs therefore cannot seek relief for alleged breaches of HIPAA's Privacy Rule. The only issue in this case is whether Plaintiffs are entitled to relief under their state-law causes of action.

Each claim fail because Plaintiffs do not plausibly allege that protected information was disclosed to third parties.[3]

### 1. *Plaintiffs Do Not Allege That Any Actual Disclosure Occurred.*

Under Ohio law, a disclosure requires that the information at issue be viewed and understood by a third party. For instance, in *Ohio v. Gonzalez*, the Ohio Court of Appeals held that "[a] person of common intelligence would know that to 'disclose' is to reveal or make known." 796 N.E.2d 12, 21 (Ohio Ct. App. 2003) (interpreting statute which requires disclosure of HIV status to a sexual partner before engaging in sexual conduct). The Court continued to explain that a disclosure occurs when a person being told "hears and comprehends the information." *Id.* at 22. Courts have resisted attempts to interpret "disclosure" under Ohio law to include *potential* disclosures. *Id.* at 21. In *Ackerman v. Medical College of Ohio Hosp.*, 680 N.E.2d 1309 (Ohio Ct. App. 1996), the Ohio Court of Appeals similarly held that a plaintiff could only recover under R.C. § 3701.243 if the covered information was, in fact, disclosed (or revealed) to a third person. *See id.* at 1311. And interpreting an invasion of privacy claim that (like the claims here) required disclosure of protected information, the Northern District of Ohio held that no disclosure occurred if someone had the opportunity to—but did not actually—view the information. *See Yoder v. Ingersoll-Rand Co.*, 31 F. Supp. 2d 565, 570 (N.D. Ohio 1997).

Courts addressing disclosure in analogous contexts have reached the same conclusion. As the Federal Circuit noted when interpreting a federal confidentiality statute, disclosure requires "not just transmission, but actual viewing or imminent viewing by another." *Wrocklage v. Dep't of Homeland Security*, 769 F.3d 1363, 1369 (Fed. Cir. 2014). In *Scott v. Ohio Department of*

---

[3] Plaintiffs assert three common law claims in Counts III through V. Each claim is pled in the alternative, and each claim fails for the reasons set forth in Section III.D, *infra*.

*Rehabilitation & Correction*, 999 N.E.2d 231, 240 (Ohio Ct. App. 2013), the Court found that no disclosure occurred when a prison simply disposed of unshredded medical documents in a trash room that inmates could access. Likewise, in a highly analogous case, the Tenth Circuit held that sending confidential information to an unsecured fax machine where "unauthorized persons *might* have viewed" the information did not constitute a "disclosure." *Luster v. Vilsack*, 667 F.3d 1089, 1098 (10th Cir. 2011) (emphasis added).

In short, a key element of a claim under *Biddle* or R.C. § 3701.243 is disclosure to a third party. In their original complaint, Plaintiffs alleged that Caremark's actions "resulted in the *potential* or actual disclosure" of their HIV status to a laundry list of individuals, including family members, "friends, roommates, landlords, neighbors, mail carriers, and complete strangers." ECF 1, ¶ 14 (emphasis added). After Caremark demonstrated in its original motion to dismiss that merely the "potential" disclosure of protected information was not actionable, Plaintiffs amended their complaint to conclude that some recipients' HIV status was disclosed at least to mail carriers and possibly Fiserv. *See* Am. Compl. ¶ 20. But simply using the words "disclosure" and "disclosed" does not change the result – Plaintiffs have not stated any *facts* to support that there has been an actual disclosure. Plaintiffs do not allege that any mail carrier or Fiserv employee actually saw their respective letter, viewed the small font, alphanumeric program identification code, and learned their HIV status. As a result, Plaintiffs cannot identify any individual who learned of their HIV status as a result of the alleged disclosure despite the fact that the alleged disclosure occurred ten months ago. The disclosure of their HIV status remains purely hypothetical. That is fatal. As in *Scott*, the fact that private medical information *could* be accessed by others does not create a disclosure. 999 N.E.2d at 240.

- 6 -

The lack of any factual allegations is made apparent by looking at the few allegations that discuss Plaintiffs' actual experience (as opposed to the generalized alleged experience of the putative class). For example, Plaintiff John Doe One equivocates that he "feels that [Caremark] has essentially handed a weapon" to unidentified persons and is "concerned that" unidentified "members of his local community have or will learn of his HIV status." Am. Compl. ¶ 31(a). Plaintiff John Doe Two "fears the stigma that *would* result from the disclosure of his HIV status." *Id.* ¶ 31(b) (emphasis added). And Plaintiff John Doe Three is concerned that unidentified friends and relatives "*would* have seen this mailing." *Id.* ¶ 31(c) (emphasis added). Even after being given an opportunity to amend their complaint, none of the John Doe Plaintiffs can identify any actual disclosure. The Court should reject Plaintiffs' request to credit their conclusory allegation and make the unsupported and unfounded inference that simply because Fiserv and the USPS were involved in the delivery of the letters, their HIV status was necessarily disclosed to a third party.

In sum, Plaintiffs can only allege that protected information *might* have been disclosed to third parties and that they *might* suffer consequences in the future. But the alleged disclosure in this case occurred more than ten months ago, and Plaintiffs allege no facts suggesting that their hypothetical fears have materialized into actual disclosures. That is fatal to their claims because those claims do not impose liability for potential disclosures – liability only attaches when protected information is actually disclosed. Plaintiffs' mere "belief" that their HIV status was disclosed are "'naked assertions devoid of further factual enhancement' [that] contribute nothing to the sufficiency of the complaint." *16630 Southfield Ltd. P'ship v. Flagstar Bank, F.S.B.*, 727 F.3d 502, 506 (6th Cir. 2013) (quoting *Iqbal*, 556 U.S. at 678); *see also In re Darvocet, Darvon, & Propoxyphene Prod. Liab. Litig.*, 756 F.3d 917, 931 (6th Cir. 2014) ("The mere fact that someone believes something to be true does not create a plausible inference that it is true.").

Similarly, the "possibility" that protected information might have been disclosed "fails to satisfy the pleading standards set forth in *Twombly* and *Iqbal*." *Patterson v. Novartis Pharm. Corp.*, 451 F. App'x 495, 497 (6th Cir. 2011).

### 2. Even if Some Information Were Disclosed, Plaintiffs Do Not Adequately Allege That it Was Protected Under **Biddle** *or R.C. § 3701.243.*

Plaintiffs' claims also fail for the related (but independent) reason that Plaintiffs do not plausibly allege that the program identification number visible in the glassine window gives rise to a claim under either Count.

Plaintiffs allege that Caremark violated three subsections of R.C. § 3701.243 which protect against the disclosure of three types of information: (1) the "identity of any individual on whom an HIV test is performed"; (2) the "results of an HIV test in a form that identifies the individual tested"; and (3) the "identity of any individual diagnosed as having AIDS or an AIDS-related condition." R.C. § 3701.243(A)(1)–(3). This statute is specifically limited to protecting the information transmitted in an HIV test, and it does not generally protect information regarding an individual's HIV status. *See id.* The first two subsections – prohibiting the disclosure of the identity of an individual tested for HIV and the results of an HIV test that identifies the individual tested – are inapplicable. There is no reference to testing anywhere visible on the mailing, and certainly the alphanumeric program identification code, which is the entire basis for Plaintiffs' lawsuit, does not disclose any testing information. Caremark anticipates that Plaintiffs will argue that testing can be *inferred* or *assumed* because a positive HIV test is a prerequisite to participation in OHDAP. Am. Compl. ¶ 14. But that argument turns the statute on its head because to reach a conclusion regarding testing, the viewer of the mailing would be required to know that the mailing was being sent in connection with Ohio's Ryan White Program (there is no such indication on the mailing), know a criteria for participation in the program is a positive HIV test, and then understand

- 8 -

that the addressee is, in fact, a participant. This hypothetical chain of conjectures that Plaintiffs appear to posit does not change the character of the information visible on the mailing, which on its face does not reveal any protected testing information. *See Ackerman*, 680 N.E.2d at 1312 ("In ascertaining the legislative intent of a statute, it is the duty of the court to give effect to the words used in a statute, not to delete words used or to insert words not used."). Similarly, Plaintiffs do not allege that Caremark disclosed any information regarding AIDS or an "AIDS-related condition," which is narrowly defined by statute to only include "symptoms of illness related to HIV infection, including AIDS-related complex, that are confirmed by a positive HIV test." R.C. § 3701.24(3). The Amended Complaint does not mention Plaintiffs' "symptoms" or allege that their HIV status was "confirmed by a positive HIV test." The third subsection is also inapplicable because the program identification number does not actually reveal the "identity" of anyone. In short, Plaintiffs have not alleged that the mailings disclosed the information protected by any subsection of R.C. § 3701.243(A).

*Biddle* protects "nonpublic medical information" from disclosure. *Biddle*, 715 N.E.2d at 523. As a gating matter, there is no support for the proposition that the program identification number constitutes medical information. But even assuming it does, Plaintiffs fail to establish that the information was "nonpublic" because they do not identify to whom the information was "disclosed." For example, John Doe Two admits that his HIV status was previously disclosed in another "similar incident." Am. Compl. ¶ 31(b). And none of the Plaintiffs allege that their HIV status is completely secret. If the people who saw the letter already knew of the Plaintiffs' HIV status, no "nonpublic" information would have been disclosed. Plaintiffs are making a jump when they ask the Court to believe that someone like a mailman would have read the code, while delivering a letter, and learned the Plaintiffs' HIV status from the code. This is particularly so

- 9 -

when Plaintiffs do not even attempt to allege that anyone has actually learned their HIV status, just a hypothetical risk that their HIV status could have been disclosed.

In sum, Plaintiffs have not alleged the disclosure of protected information under either *Biddle* or R.C. § 3701.243.

  **B.**  **Plaintiffs Do Not Adequately Allege A *Biddle* Claim (Count I) Because They Do Not Plead Facts Showing That Caremark Is A Physician Or Hospital.**

Even if Plaintiffs had adequately alleged that protected information was disclosed to third parties (they have not), *Biddle* still would not apply because Plaintiffs do not allege that Caremark is a physician or hospital. In *Biddle*, the Supreme Court of Ohio created a tort for the disclosure of information "that a physician or hospital has learned within a physician-patient relationship." 715 N.E.2d at 523. "[T]he cause of action only applies to physicians or hospitals who disclose nonpublic medical information to a third party." *Raiser v. Corp. of the President of the Church of Jesus Christ of Latter-Day Saints*, 494 F. App'x 506, 507 (6th Cir. 2012). That is because "*Biddle* is narrowly framed, providing liability can be established against only two parties: a physician or hospital that commits an unauthorized and unprivileged disclosure and a third-party that induces the disclosure to be made." *Templeton v. Fred W. Albrecht Grocery Co.*, 72 N.E.3d 699, 702 (Ohio Ct. App. 2017).

Plaintiffs cannot and do not allege that Caremark is a hospital or physician. In fact, Plaintiffs expressly allege that Caremark contracted with OHDAP to serve as a pharmacy benefits manager, and it was that contract that Plaintiffs allege "resulted in . . . [Caremark] being responsible for the mailings and illegal disclosures at issue herein." Am. Compl. ¶ 5. Plaintiffs allege that their HIV status was originally learned within a physician-patient relationship, and that to participate in OHDAP, an applicant must submit medical documents. Am. Compl. ¶¶ 43-44. But these allegations do not bring Caremark within the reach of a *Biddle* claim – Caremark is not

in a physician-patient relationship with Plaintiffs, and Plaintiffs do not allege that Caremark learned of their HIV status from their physician. The fact that Caremark allegedly obtained this information through unnamed third parties does not transform Caremark, a pharmacy benefits manager, into a doctor. Caremark therefore cannot be liable under *Biddle*, and Count I should be dismissed.[4]

### C. Plaintiffs Do Not Allege Facts To State A Claim Under R.C. § 3701.243.

In addition to Plaintiffs' failure to plausibly allege that protected information was disclosed, Plaintiffs' claim for alleged violation of R.C. § 3701.243 fails for three additional reasons.

First, liability only extends to defendants who "knowingly violate" the prohibitions on disclosure in R.C. § 3701.243. *See* R.C. § 3701.244(B). To establish liability, therefore, Plaintiffs "must demonstrate that [Caremark] had actual awareness that [the statute] had been violated, or, at the very least, [Plaintiffs] must establish facts from which knowledge could be inferred." *Doe v. Ohio State Univ. Hosp. and Clinics*, 663 N.E.2d 1369, 1373 (Ohio Ct. App. 1995). Mere knowledge of the statute or the prohibition on disclosure is insufficient. *Id.*; *see also Ackerman*, 680 N.E.2d at 1312 ("That statute provides that a state agency, such as appellee, is liable only for a knowing violation of R.C. 3701.243(A) . . . .").

Here, Plaintiffs attempt to plead a knowing violation by making numerous references in the Amended Complaint to the fact that Caremark agrees to comply with all federal and state laws, in addition to being committed to protecting "PHI under HIPAA." *See, e.g.*, Am. Compl. ¶ 23.

---

[4] If the Court finds that the Plaintiffs have stated a claim under R.C. § 3701.243 (they have not), Count I should be dismissed for the additional reason that § 3701.244 provides the "exclusive civil remedies for an individual injured by noncompliance" with § 3701.243. R.C. § 3701.244(F). Because R.C. § 3701.244 provides the exclusive remedy for disclosure of HIV status, Plaintiffs could not recover under *Biddle* for the same alleged misconduct.

But Caremark's commitment to compliance and protecting PHI does not make it plausible that Caremark disseminated the mailing *knowing* it violated R.C. § 3701.243(A). Plaintiffs' additional allegations undercut this claim. Plaintiffs allege, for instance, a single mailing – Plaintiffs do not allege that Caremark has continued to send communications to OHDAP participants with the program identification code visible. Plaintiffs also allege that the Chief Privacy Officer for Caremark explained that the mailing was not "intentional" and "that it would modify its procedures in place to ensure that such an incident would not happen again." *Id.* In fact, despite sprinkling the word "knowing" throughout the Amended Complaint, Plaintiffs' assertion of a knowing violation of the Ohio's AIDS disclosure statute is directly undercut by Plaintiffs' multiple allegations of unintentional, negligent conduct. For instance, Plaintiffs allege "[Caremark] also made no effort to either test or quality control its mailings to ensure no PHI was publicly visible, or to prevent its vendors, including Fiserv, from using windowed envelopes that would disclose such information" Am. Compl. ¶ 24; *see id.* ¶ 26 ("Defendants either knew or reasonably should have known that this mailing was disseminated in violation of both federal and state laws."). Plaintiffs' claim that Caremark knowingly violated R.C. § 3701.243(A) is not plausible and should be rejected.

Second, the statute only applies to a "person or agency of state or local government." R.C. § 3701.243(A); *see also* R.C. § 3701.244(B) (imposing liability on a "person or agency of state or local government"). Interpreting this statute, the court in *Milhouse v. Care Staff, Inc.*, No. 05 MA 234, 2007 WL 1589465 (Ohio Ct. App. May 29, 2007), found that it "only governs persons or agencies of state or local government" and does not apply when "there is no allegation or evidence that state or local government entities were involved." *Id.* \*5. Because Plaintiffs do not allege that Caremark is a government entity, R.C. § 3701.243 is inapplicable, and this claim fails.

Third, the statute only applies if the defendant learned the protected information "while providing any health care service or while in the employ of a health care facility." R.C. § 3701.243(A). "Health care service" is not defined in the statute. But "health care provider" is defined to only include an "individual who provides diagnostic, evaluative, or treatment services." R.C. § 3701.24(11). Accordingly, the Northern District of Ohio held that the statute does not apply to companies providing "tangential items such as disability benefits." *Yoder*, 31 F. Supp. 2d at 571. In this case, Plaintiffs do not allege that Caremark disclosed their HIV status while providing "diagnostic, evaluative, or treatment services." Instead, Plaintiffs allege that Defendant Caremark, L.L.C.'s agreement with OHDAP "resulted in [Caremark] being responsible for the mailings and illegal disclosures at issue herein." Amended Compl. ¶ 5. Under that agreement, Caremark, L.L.C. operated as a pharmacy benefits manager. *Id.* A pharmacy benefits manager merely "provide[s] pharmacy health benefit services or administration" and "contracts with pharmacies" on behalf of "third-party payer[s]." R.C. § 3959.01(N). Pharmacy benefits managers do not provide health care services. In fact, they are regulated by the Ohio Department of Insurance (*see* R.C. § 3959.04)—not the Ohio Department of Health, the Ohio Medical Board, or the Ohio Board of Pharmacy. In short, Caremark helps provide health care "benefits," not health care "services" and therefore falls outside the scope of R.C. § 3701.243.

### D. Plaintiffs' Duplicative Common Law Claims Must Be Dismissed.

Plaintiffs assert in the Amended Complaint three additional common law claims in the alternative. *See* Am. Compl. ¶¶ 58-78. Each one fails and should be dismissed. These causes of action are predicated upon the same alleged disclosure of Plaintiffs' HIV status that gives rise to Plaintiffs' *Biddle* claim (Count I) and claim for an alleged violation of Ohio's AIDS disclosure statute (Count II). *See* Am. Compl. ¶¶ 62, 70, 76. Even if Plaintiffs' alternative common law

claims were viable independent causes of action (which they are not for the reasons set forth below), they must be dismissed because Plaintiffs fail to allege an actual disclosure of their protected medical information for the reasons set forth in Section III.A, *supra*. For this reason alone Counts III through V should be dismissed.

Plaintiffs' alternative claims fail for yet another reason. Each of those claims is based on an alleged breach of a duty not to disclose medical information. *See* Am. Compl. ¶¶ 61, 68, 75. But the only duty to prevent the disclosure of medical information recognized by Ohio's common law as giving rise to a cause of action is the duty created in *Biddle*, where the Ohio Supreme Court "created a new cause of action." *Pica v. OhioHealth Corp.*, 2011 WL 9527579 (Ohio Com. Pl. Apr. 12, 2011). The Ohio Supreme Court recognized this new common law duty because "the various methods that courts have used to address such claims (including theories like invasion of privacy, defamation, breach of contract, and others)," as well as negligence, were "unsatisfactory." *Hageman v. Sw. Gen. Health Ctr.*, 119 Ohio St. 3d 185, 188, 893 N.E.2d 153, 156 (Ohio 2008). In recognizing a new, independent duty, the *Biddle* Court "explicitly rejected" attempts to fit a claim premised on the unauthorized disclosure of medical information into "a number of traditional or accepted legal theories." *Norris v. Smart Document Sols., LLC*, 483 F. App'x 247, 249-50 (6th Cir. 2012) (internal quotation marks and citations omitted). The Ohio Court of Appeals has explained that the "consolidation of other theories of recovery" based on an alleged unauthorized disclosure of medical information into a *Biddle* claim "is certain." *Sheldon*, 40 N.E.3d at 673

As a result, Courts have consistently dismissed duplicative claims based on an alleged unauthorized disclosure of medical information when brought under any theory other than as a *Biddle* claim. For instance, in *Sheldon* the Ohio Court of Appeals held that plaintiffs failed to state an independent claim for breach of fiduciary duty because that cause of action is "subsumed along

- 14 -

with the other theories, particularly when appellant contends that . . . [the defendant] breach[ed] its fiduciary duty of confidentiality as set forth in *Biddle* by disclosing information to authorized employees." *Id.* at 673-74.[5]  *Biddle* itself expressly identified a negligence claim as one of the legal theories that courts have been forced to "stretch[ ] . . . beyond their reasonable bounds" by courts addressing claims for unauthorized disclosure of medical information. *Scott v. Ohio Dep't of Rehab. & Corr.*, 2013-Ohio-4383, ¶ 29, 999 N.E.2d 231, 240 (referring to *Biddle* claim as a claim for "breach of patient confidentiality"); *Pica*, 2011 WL 9527579 (holding that the only recognized tort for unauthorized disclosure of medical information under Ohio law is a *Biddle* claim and, as a result, "plaintiff's claims [based on an unauthorized disclosure of medical information] for breach of fiduciary duty, invasion of privacy, and negligent/intentional infliction of emotional distress are without merit *as a matter of law*") (emphasis added); *see Biddle*, 715 N.E.2d at 523 (identifying negligence, among numerous others, as an "unsatisfactory" theory that courts have been forced to "stretch . . . beyond their reasonable bounds" in addressing claims for unauthorized disclosure of medical information). Accordingly, because the only recognized claim under Ohio common law for an alleged unauthorized disclosure of medical information is a *Biddle* claim, Plaintiffs have failed to state viable independent causes of action as a matter of law in Counts III through V. Those Counts should be dismissed.

---

[5] Plaintiffs' breach of fiduciary duty claim fails for the additional reason that Plaintiffs do not plausibly allege a fiduciary relationship, which under Ohio law "arises when a party places trust in the integrity and fidelity of another and there is a resulting position of superiority or influence acquired by virtue of this special trust." *Linder v. Am. Natl. Ins. Co.*, 2003-Ohio-5394, ¶ 36, 155 Ohio App. 3d 30, 39, 798 N.E.2d 1190, 1198. Here, Plaintiffs fail to allege that they had any relationship with Caremark when they received the letters. Indeed, Plaintiffs allege that the letters were sent "regardless of whether . . . [the recipients] were active pharmacy customers of CVS . . .". Compl. ¶ 18.

## IV.     CONCLUSION

For these reasons, Caremark respectfully requests that the Court dismiss Plaintiffs' Amended Complaint.  Caremark requests that it be dismissed with prejudice.  *See Riverview Health Inst. LLC v. Med. Mut. of Ohio*, 601 F.3d 505, 520 (6th Cir. 2010) (finding denial of leave to amend appropriate when further amendment would be futile).

        Respectfully submitted,

        /s *Robert G. Cohen*
        Robert G. Cohen (0041707)
        KEGLER BROWN HILL + RITTER CO., LPA
        65 East State Street, Suite 1800
        Columbus, Ohio 43215
        Phone: 615-462-5492
        Fax: 614-462-2634
        rcohen@keglerbrown.com

        Kristine M. Brown (admitted *pro hac vice*)
        Donald M. Houser (admitted *pro hac vice*)
        Matthew L.J.D. Dowell (admitted *pro hac vice*)
        ALSTON & BIRD LLP
        1201 West Peachtree Street
        Atlanta, Georgia 30309
        Phone: 404-881-7434
        Fax: 404-881-7777
        kristy.brown@alston.com
        donald.houser@alston.com
        matt.dowell@alston.com

        *Attorneys for Caremark, L.L.C.*

## **CERTIFICATE OF SERVICE**

The undersigned hereby certifies that true and accurate copies of the foregoing were served upon all counsel by the Court's Electronic Filing System this 26th day of June, 2018.

          /s/ Robert G. Cohen
          Robert G. Cohen