**UNITED STATES DISTRICT COURT FOR THE**
**SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | |
|---|---|
| JOHN DOE ONE; JOHN DOE TWO; JOHN DOE THREE; and JOHN DOE FOUR, on behalf of themselves and all similarly situated individuals, *Plaintiffs*, v. CAREMARK, L.L.C.; FISERV, INC., FISERV SOLUTIONS, LLC; and DEFENDANTS DOES 1–10, *Defendants*. | No. 2:18-cv-00238-EAS-CMV No. 2:18-cv-00488-EAS-CMV (Consolidated for all purposes) Chief Judge Edmund A. Sargus, Jr. Magistrate Judge Chelsey M. Vascura DEMAND FOR JURY TRIAL |

## FISERV'S ANSWER TO CONSOLIDATED AMENDED CLASS ACTION COMPLAINT

Defendants Fiserv, Inc. and Fiserv Solutions, LLC (collectively, "Fiserv"), answer Plaintiffs' Consolidated Amended Class Action Complaint ("Consolidated Amended Complaint") as follows.

## INTRODUCTION

1.     Medical privacy is among the most important tenets of American healthcare. Patients must be able to trust their physicians, insurers, and pharmacies to protect their medical information from the improper disclosure (including, but not limited to, their health conditions and courses of treatment). Indeed, numerous state and federal laws explicitly require this. And, these laws are especially important when protecting individuals with particular medical conditions such as HIV or AIDS that can and do subject them to regular discrimination.

**ANSWER:**     Fiserv admits that the allegations in Paragraph 1 purport to draw generalizations regarding medical privacy, American health care, and individuals receiving treatment for medical conditions, including the extent to which persons with HIV or AIDS may be subject to discrimination based on their HIV or AIDS status.  Fiserv denies that the allegations in

1

Paragraph 1 evidence that any of the Plaintiffs or any of the purported class members have suffered

the injury alleged, and demands strict proof of any alleged injury(ies) or damages.  The remaining

allegations in the final two sentences of Paragraph 1 state legal conclusions to which no response

is required.  Fiserv denies any remaining allegations in Paragraph 1.

2.      The Plaintiffs,[1] who are living with HIV, bring this action based on the above-listed
Defendants' ("Defendants") unauthorized disclosures of theirs and over 6,000 persons' HIV status
and their participation in the OhDAP Program. Except where specifically noted as being based on
personal knowledge, the allegations herein are based on information and belief formed after an
inquiry, reasonable under the circumstances, which allegations are likely to have evidentiary
support after a reasonable opportunity for further investigation and discovery. Accordingly,
Plaintiffs bring suit as a putative class action for damages, injunctive, and declaratory relief.

**ANSWER:**     Fiserv admits that Plaintiffs have been granted leave to use fictitious names

and that they purport to bring this action based on the alleged "unauthorized disclosures of theirs

and over 6,000 persons' HIV status and their participation in the OhDAP Program," but denies

that an "unauthorized disclosure[] of [Plaintiffs'] and over 6,000 persons' HIV status and their

participation in the OhDAP Program" occurred or that Plaintiffs are otherwise entitled to the relief

they seek.  Fiserv lacks knowledge or information sufficient to form a belief as to the truth of

Plaintiffs' allegations that they are "living with HIV."  Fiserv also lacks knowledge or information

sufficient to form a belief as to the truth of any allegations in the second sentence in Paragraph 2.

Fiserv admits that Plaintiffs seek the relief asserted in Paragraph 2 but denies that Plaintiffs are

entitled to such relief.  Fiserv denies any remaining allegations in Paragraph 2.

## PARTIES

3.      On personal knowledge, Plaintiff John Doe One is an individual residing in
Delaware County, Ohio. He is a client of the Ohio HIV Drug Assistance Program ("OhDAP"). In
or about August 2017, he received the mailing at issue herein disclosing his HIV status and
suffered injury in fact as a result thereof.

---

[1] Plaintiffs John Doe One, John Doe Two, and John Doe Three have been granted leave to proceed
under fictitious names. Doc. No. 26. Plaintiff John Doe Four was granted leave to proceed under
a fictitious name in Civil Case No. 2:18-cv-488, now consolidated with this matter. Doc. No. 16.

**ANSWER:** Fiserv denies that the mailing at issue disclosed Plaintiff John Doe One's alleged HIV status to any unauthorized party, particularly based on Plaintiffs' continuing failure or refusal to identify a single unauthorized person to whom their alleged HIV status was actually disclosed, and accordingly further denies that Plaintiff John Doe One suffered any injury in fact as a result thereof. Fiserv lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 3.

4.     On personal knowledge, Plaintiff John Doe Two is an individual residing in Defiance County, Ohio. He is a client of OhDAP. In or about August 2017, he received the mailing at issue herein disclosing his HIV status and suffered injury in fact as a result thereof.

**ANSWER:** Fiserv denies that the mailing at issue disclosed Plaintiff John Doe Two's alleged HIV status to any unauthorized party, particularly based on Plaintiffs' continuing failure or refusal to identify a single unauthorized person to whom their alleged HIV status was actually disclosed, and accordingly further denies that Plaintiff John Doe Two suffered any injury in fact as a result thereof. Fiserv lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 4.

5.     On personal knowledge, Plaintiff John Doe Three is an individual residing in Gallia County, Ohio. He is a client of OhDAP. In or about August 2017, he received the mailing at issue herein disclosing his HIV status and suffered injury in fact as a result thereof.

**ANSWER:** Fiserv denies that the mailing at issue disclosed Plaintiff John Doe Three's alleged HIV status to any unauthorized party, particularly based on Plaintiffs' continuing failure or refusal to identify a single unauthorized person to whom their alleged HIV status was actually disclosed, and accordingly further denies that Plaintiff John Doe Three suffered any injury in fact as a result thereof. Fiserv lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 5.

6.     On personal knowledge, Plaintiff John Doe Four is an individual residing in Montgomery County, Ohio. He is a client of OhDAP. In or about July or August 2017, he received the mailing at issue herein disclosing his HIV status and suffered injury in fact as a result thereof.

**ANSWER:**    Fiserv denies that the mailing at issue disclosed Plaintiff John Doe Four's alleged HIV status to any unauthorized party, particularly based on Plaintiffs' continuing failure or refusal to identify a single unauthorized person to whom their alleged HIV status was actually disclosed, and accordingly further denies that Plaintiff John Doe Four suffered any injury in fact as a result thereof.  Fiserv lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 6.

7.    Defendant Caremark, L.L.C. ("CVS") is a foreign limited liability company with its principal place of business in either Rhode Island or Illinois. CVS entered into an agreement in or about March 2017, effective July 2017, with the State of Ohio in response to a February 2017 request for proposal to operate as the pharmacy benefits manager for the State's Ryan White Program, which agreement resulted in CVS being responsible for the mailings and illegal disclosures at issue herein. As part of that Request For Proposal for services, CVS advertised, marketed, promoted, offered for sale and sold its services to the State of Ohio, which were provided in a manner that adversely impacted Plaintiffs and Class members.[2]

**ANSWER:**    Fiserv admits that Defendant Caremark, L.L.C. is a foreign limited liability company, but lacks knowledge or information sufficient to form a belief as to Caremark L.L.C.'s principal place of business.  Fiserv also lacks knowledge or information sufficient to form a belief as to the truth of Plaintiffs' allegations concerning any agreement between CVS and the State of Ohio and the terms thereof and any Request For Proposal from the State of Ohio or response thereto submitted by CVS and the content thereof.  Fiserv admits the allegations in footnote 2. Fiserv denies any remaining allegations in Paragraph 7.

8.    Defendant Fiserv, Inc. is a foreign corporation with its principal place of business in Wisconsin. On its own or through its subsidiary Fiserv Solutions, LLC, it was contracted by CVS in connection with CVS obtaining the contract with the Ohio Department of Health ("ODH") to mail information to Plaintiffs and thousands of individuals throughout Ohio, including the mailings and illegal disclosures at issue herein. In doing so, Fiserv, either directly or through its subsidiary, agreed that it was obligated to comply with various CVS agreements, protocols,

---

[2] CVS Health Corporation, and Caremark Rx, L.L.C., were named as defendants in the original complaint in this action, and were previously dismissed without prejudice pursuant to Federal Rule of Civil Procedure 15(a).

practices and orders, several of which are cited herein, to protect the confidentiality and prevent the disclosure of the personal health information at issue herein.

**ANSWER:**    Fiserv admits that Fiserv, Inc. is a Wisconsin corporation with its principal place of business in Wisconsin.  Fiserv admits that one of Fiserv, Inc.'s wholly owned subsidiaries, Fiserv Solutions, Inc., entered into a Master Service Agreement effective as of March 29, 2013, and later amended, with CVS Pharmacy, Inc., on its own behalf and on behalf of its subsidiaries and affiliates including, without limitation, Caremark Rx, L.L.C. (collectively, "CVS") (the "Master Service Agreement").  Fiserv further admits that, on March 31, 2015, Fiserv Solutions, Inc., was converted to a limited liability company under Wisconsin law to become Fiserv Solutions, LLC, a Wisconsin limited liability company.  Fiserv admits that the Master Service Agreement sets out the terms of the contractual relationship between Fiserv Solutions, LLC, and CVS with respect to, inter alia, the mailings placed at issue by the Consolidated Amended Complaint.  Fiserv denies the remaining allegations in Paragraph 8 and refers to the Master Service Agreement for the complete terms thereof.

9.    Defendant Fiserv Solutions, LLC is a foreign Limited Liability Company with its principal place of business in Wisconsin. Fiserv Solutions, LLC is a wholly-owned subsidiary of Fiserv, Inc. Fiserv Solutions, LLC, on its own or through Fiserv Inc., was contracted by CVS to mail information to Plaintiffs and thousands of individuals throughout Ohio, including the mailings and illegal disclosures at issue herein, and appears to be the entity that disseminated the mailing at issue herein. Fiserv, Inc. and Fiserv Solutions, LLC will be collectively referred to as "Fiserv" in this Complaint. Fiserv did not have authorization from Plaintiffs to access, be provided access to or disclose the personal health information at issue herein.

**ANSWER:**    Fiserv admits that Fiserv Solutions, LLC is a Wisconsin limited liability company with its principal place of business in Wisconsin.  Fiserv admits that Fiserv, Inc. is the parent of Fiserv Solutions, LLC.  Fiserv admits that Plaintiffs collectively refer to Fiserv, Inc. and Fiserv Solutions, LLC as "Fiserv" in the Consolidated Amended Complaint.  Fiserv denies the allegations of the third sentence in Paragraph 9 and denies the remaining allegations in Paragraph 9 and refers to the Master Service Agreement for the complete terms thereof.

10. Defendant Does 1–10 are entities whose identities are not currently known or verified. As the true names, roles and capacities of Defendants named as Does 1–10 are currently unknown to Plaintiffs; they are therefore named as Defendants under fictitious names. Plaintiffs will identify their true identities and their involvement in the wrongdoing at issue if and when they become known. All Defendants' conduct described herein, including that of Does 1–10, was undertaken or authorized by Defendants' officers or managing agents who were responsible for the supervision and operation decisions relating to the wrongdoing here at issue. The described conduct of said managing agents and individuals was therefore undertaken on behalf of Defendants. Defendants had advance knowledge of the actions and conduct of said individuals whose actions and conduct were ratified, authorized, and approved by such managing agents. By engaging in the conduct described herein, Defendants agreed with each other, the Doe Defendants and/or other third-parties to engage in the illegal conduct at issue herein. As set forth below, Defendants unjustly profited as a result of these agreements in violation of the laws and regulations detailed herein. As a result of such agreements, the Defendants named and to be named herein conspired and aided and abetted each other in violating the laws set forth herein.

**ANSWER:**    Fiserv admits that Plaintiffs purport to name as defendants "Does 1-10" but denies the remaining allegations in Paragraph 10.

## JURISDICTION AND VENUE

11. This Court has original jurisdiction over this action under 28 U.S.C. § 1332(d) because the amount in controversy exceeds the sum of $5,000,000, exclusive of interest and costs, and is a class action in which at least one member of the Class (as defined below) is a citizen of a State (Ohio) different from Defendants CVS (Rhode Island or Illinois) and Fiserv (Wisconsin). As set forth below, the Defendants illegally disclosed the HIV status of approximately 6,000 people without authorization. Ohio courts have awarded at least $6,000 in damages for individuals whose HIV status has been disclosed without authorization. The potential for a similar award in this Court shows that the amount in controversy is in excess of $5,000,000.

**ANSWER:**    Fiserv admits that this Court has subject matter jurisdiction over this action under 28 U.S.C. § 1332(d), as the amount purportedly in controversy exceeds the sum or value of $5,000,000, exclusive of interests and costs, and as this action is a putative class action in which at least one member of the putative class of plaintiffs is alleged to be a citizen of a state different from that of at least one defendant. Fiserv denies that Plaintiffs are entitled to the relief asserted and further denies that Plaintiffs are entitled to pursue a class action. Fiserv lacks knowledge or information sufficient to form a belief as to the truth of the allegation about past awards by Ohio courts. Fiserv denies the remaining allegations in Paragraph 11.

6

12. Venue is appropriate in this District under 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to the claim occurred in this District and at least one of the Plaintiffs resides in this District.

**ANSWER:** Fiserv lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 12.

## FACTUAL ALLEGATIONS

13. OhDAP was initially established in 1990 under the Ryan White HIV/AIDS Treatment Extension Act, 42 U.S.C. §§ 300ff, *et seq*. This federal legislation has been renewed four times – 1996, 2000, 2006 and 2009 – and is now called the Ryan White Program within Ohio and nationwide.

**ANSWER:** The allegations in Paragraph 13 purport to characterize federal and state statutes and regulations and state legal conclusions to which no response is required. To the extent a response is required, Fiserv refers to the text of the relevant federal and state statutes and regulations and denies any allegations inconsistent therewith. Fiserv denies any remaining allegations in Paragraph 13.

14. The OhDAP website states:

The Ohio Department of Health (ODH) administers the Ohio HIV Drug Assistance Program (OHDAP), providing medications to fight HIV and to treat HIV-related conditions. This program must be the payer of last resort. For eligible participants, HIV-related medications are provided free of charge. The medications are obtained through a specialty mail-order pharmacy to ensure confidentiality and to ensure all geographic areas of Ohio have equal access to this service. Verification of monthly income, updated enrollment applications and a physician's report are required at the beginning of each enrollment period.

*See* http://ohiv.org/care/medication-payment-assistance/ (last accessed 1/29/2019).

**ANSWER:** Fiserv admits that Paragraph 14 purports to quote the OhDAP website, but refers to the text of the OhDAP website for the complete content thereof and denies any allegations inconsistent therewith. Fiserv denies any remaining allegations in Paragraph 14.

15. There are three main components within OhDAP. One component is for direct drug provision for eligible uninsured individuals (*i.e.*, individuals with HIV who are not eligible for Medicaid due to income level or citizenship status). Another component is used to provide

premium assistance to eligible individuals (*i.e.*, ACA, Medicare Part D, private health insurance or the employee copayment or coinsurance portion of employer-based insurance). The last component assists insured individuals with their co-pays for their life-saving HIV-related medications.

**ANSWER:** The allegations in Paragraph 15 purport to characterize Ohio state statutes and regulations pertaining to OhDAP and state legal conclusions to which no response is required. To the extent a response is required, Fiserv refers to the text of the relevant Ohio state statutes and regulations pertaining to OhDAP and denies any allegations inconsistent therewith. Fiserv denies any remaining allegations in Paragraph 15.

16. To participate in OhDAP, an individual must submit an application and certify that he or she is HIV-positive, stating the year of the individual's first positive HIV test. The applicant must also attach "medical verification documents," which "are required to establish that an individual is HIV+ and, thus, eligible for our services." Therefore, for purposes of OhDAP, an individual's HIV-positive status necessarily means that the individual has had an HIV test performed on him or her, the result of that HIV test was positive, and provided Personal Health Information ("PHI") to a third party reflecting those results.

**ANSWER:** The allegations in Paragraph 16 purport to characterize Ohio state statutes and regulations pertaining to applications submitted to OhDAP and state legal conclusions to which no response is required. To the extent a response is required, Fiserv refers to the text of the relevant Ohio state statutes and regulations pertaining to applications to OhDAP and denies any allegations inconsistent therewith. Fiserv denies any remaining allegations in Paragraph 16.

17. In February 2017, ODH issued a request for proposals for the purchase of pharmacy benefit management services for OhDAP. The first criterion for evaluating services to be provided under the contract was "Pharmacy Services," the first of which was the development of a pharmacy distribution network. CVS, which submitted a proposal to promote, market and sell its services to ODH, proposed to create this network through its own retail and mail-order pharmacies, through which it has provided medications under contracts with OhDAP since 2000. In the cover letter for its bid, CVS stated, "All of the information contained in this proposal references the capabilities of, and services available from Caremark, L.L.C. ('CVS Caremark')." CVS also stated that it is a health care provider: after stating that it was using the terms "CVS Health" and "CVS Caremark" interchangeably, CVS stated, "As a Fortune 10 company, CVS Health is the largest pharmacy health care provider in the United States with integrated offerings cross the entire spectrum of pharmacy care." In another part of its bid, CVS also stated, "We understand that offering open access to pharmacy services and honoring consumer preferences (retail, mail delivery, or personal

consultation with a CVS pharmacist) sets us apart from other health care providers."[3] CVS also repeatedly described its delivery of healthcare services under the heading "Pharmacy Distribution Network." For example, CVS stated, "Our therapy-specific CareTeam outreach, provided by expert specialty pharmacy clinicians with up-to-date knowledge of evidence-based protocols, helps improve member adherence by educating them on taking medications correctly, reviewing proper medication storage and handling, and troubleshooting medication side effects. … Additionally, our national nursing model delivers specialty nursing services, education, and drug administration to our members who receive infusion and injection medications …."

> **ANSWER:**   Fiserv lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 17, including the allegations in Footnote 3.

18.   CVS's bid, which was made in connection with the marketing, promotion, offering for sale and sale of such services, also represented that it understood state and federal laws concerning the privacy of personal information and thus the extent to which it maintains and protects the privacy, confidentiality and integrity of personal information collected from or about consumers: "We are in compliance with federal and state laws and regulations that are applicable to the services to be provided by CVS Health under the Contract."

> **ANSWER:**   Fiserv lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 18.

19.   In or about March 2017, ODH awarded an exclusive contract to CVS, effective July 2017. Through this contract and others, CVS is responsible not only for managing OhDAP's pharmacy benefits, but also providing medications to OhDAP participants.

> **ANSWER:**   Fiserv lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 19.

20.   Beginning in approximately late July or early August 2017, Defendants mailed a letter containing membership cards and information marketing and promoting the CVS program and how persons would access their HIV-related prescriptions. The PHI provided by ODH was shared and/or this letter was mailed to an estimated 6,000 participants in OhDAP, regardless of whether they were active pharmacy customers of CVS. CVS thus marketed and promoted the use not only of CVS's pharmacy benefit management services, but also of its health care delivery services. The letter advised OhDAP participants that they could obtain their HIV medications in

---

[3] This was a false and misleading marketing statement, since with regard to the HIV medications in question here, CVS in fact does not "honor consumer preferences" and typically requires consumers to obtain such medications exclusively through mail delivery, directly from a CVS retail outlet, or through some other onerous delivery mechanism ("specialty pharmacy program"). CVS does so even if consumers prefer to seek personal consultation from a community pharmacist of their choice where they receive other medications, and/or if consumers do not want to obtain their medications under the specialty pharmacy program due to privacy and other concerns.

one of two ways, both provided exclusively by CVS-affiliated entities: from one of CVS's 320 retail pharmacies in Ohio (as well as 59 pharmacies located in Target stores), or through CVS's specialty mail-order pharmacy. Such services were thus offered from CVS as a singular health care entity, since otherwise Caremark LLC would have been prohibited by law from sharing the PHI it possessed and was provided to it by the ODH with these other CVS entities.

  **ANSWER:** Fiserv admits that in approximately late July and early August 2017, CVS instructed Fiserv Solutions, LLC to send certain mailings pursuant to the terms of the Master Service Agreement in respect of CVS Client #6402. Fiserv refers to the mailings at issue for the complete content thereof, and denies any allegations inconsistent therewith and any remaining allegations in Paragraph 20.

  21. Even though the information contained in this letter contained the PHI of each individual, specifically information relating to their HIV status, the envelopes containing these mailings had two clear glassine windows. One, in the upper left, contained the logo of "CVS/caremark," the words "Ohio Department of Health," and an address for ODH. A second window contained the recipient's name and address, with the designation "PM 6402 HIV" directly above the person's name. This reference to the recipient's HIV status was plainly visible through the glassine window. The designation "HIV" in the program identification number was not required by ODH, but rather was created by CVS. The envelope referred in big red letters to "new prescription benefits," thereby revealing that the mailing from CVS involved health-related information, including information about prescription medications. The envelope also stated that it was sent from St. Louis, Missouri, with Postal Permit No. 1977. Fiserv is the owner of this permit. Defendants clearly made no advance effort to test or review the disclosure of such information prior to disseminating the mailing, since had they done so they would have seen that the identification number with "HIV" next to it was prominently visible through the envelope and directly above the name and address of the individual recipient, as shown by the following:



**ANSWER:**    Fiserv refers to the mailings at issue for the complete content thereof, denies any allegations inconsistent therewith, admits that Fiserv, Inc. is the owner of Postal Permit No. 1977, and denies any remaining allegations in Paragraph 21.

22.    The Defendants' combined use of a glassine windowed envelope, their design of the letter containing the HIV status of the individual recipient in an identification code that was not required by law, and placing that code directly above the consumers' name and address such that no matter what size glassine envelope that was used this PHI could be seen through the envelope window, instead of using a different code, an opaque envelope or a letter that was properly spaced not to publicly reveal such information through the envelope window and an identification reference with the term "HIV," resulted in the actual disclosure of recipients' HIV status to the United States Postal Service, which was not privileged to receive this information under Ohio law or federal law, and potential disclosure to numerous individuals, including their families, friends, roommates, landlords, neighbors, and complete strangers. A reasonable person seeing this envelope with the letter in it, or even seeing a mock-up of the letter with the code directly above the name, or creating the identification code in the first place, would conclude that the recipient was HIV-positive or seeking medical treatment for HIV or AIDS-related conditions. That conclusion would be correct in every instance, as this mailing was sent only to HIV-positive individuals, apparently from or at the direction of ODH.

**ANSWER:**    Fiserv refers to the mailings at issue for the complete content thereof, denies any allegations inconsistent therewith, and denies any remaining allegations in Paragraph 22.

23.    The use of envelopes with transparent glassine windows contravenes the standard practice of ODH, which is to send all mailings relating to HIV-related issues in opaque, non-windowed envelopes. Thus, Defendants must not have cleared the form of this mailing, or they did so with the knowledge of that Department in contravention of such practices.

**ANSWER:**    Fiserv admits that Fiserv Solutions, LLC sent certain mailings at issue pursuant to instructions from CVS pursuant to the Master Service Agreement.  Fiserv lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 23, in particular the allegation that "transparent glassine windows contravenes the standard practice of ODH."  Fiserv denies any remaining allegations in Paragraph 23.

24.    Defendants were under a legal duty and must have known, or either knew or reasonably should have known, that this mailing was disseminated in violation of both federal and state laws. While CVS refers in connection with its privacy practices to different entities as "CVS Health" as a collective health care entity, without defining precisely what entity they are referring to, CVS has publicly represented it has systems in place to protect the privacy of sensitive health information. For example, in its Vendor Code of Conduct entitled "Conducting Business With CVS Health" (which would apply to its relationship with Fiserv), CVS claims on page 3 "It is critical that CVS Health and our vendors/supplies, who also access, use and store this information, handle it only as needed and in accordance with our Privacy and Information Security Policies and Procedures as required under our agreement with our vendors/suppliers, including our Information Privacy and Security Requirements and Business Associate Agreements. It is critical that our vendors/suppliers have in place reasonable and appropriate administrative, technical and physical safeguards to protect this information from improper or unauthorized access or use." In addition, CVS requires in this same Code of Conduct that its vendors and suppliers are expected "to abide by applicable laws and regulations, including applicable Federal health care program requirements, in the states and countries in which they conduct business" – in this case, the Ohio state laws here at issue. In addition, as noted above CVS requires all vendors to comply with CVS' Data Privacy and Security Requirement Agreements, its information Privacy and Security Requirements, and its Privacy and Information Security Policies. This Code of Conduct was executed by Neal Baker as the Chief Privacy Officer of "CVS Health" – the same person who responded to Plaintiffs' request for a response as to this particular privacy breach as set forth herein. Yet under no set of agreements, Codes, business associate agreements, policies or procedures would it be permissible to disclose for public viewing the HIV status of a particular person, in violation of Ohio law.

**ANSWER:**    The first and last sentences in Paragraph 24 state legal conclusions to which no responses are required.  To the extent responses are required, Fiserv denies the allegations of the first and last sentences in Paragraph 24.  Fiserv admits that the terms of its contractual relationship with CVS are set forth in the Master Service Agreement, and denies any allegations inconsistent therewith.  Fiserv also refers to the CVS Code of Conduct for the complete content thereof, and denies any allegations inconsistent therewith.  Fiserv denies any remaining allegations in Paragraph 24.

25.     In addition, in the CVS Health "Notice of Privacy Practices" effective as of June 30, 2017 on the CVS/Caremark website (just a few weeks before the disclosure at issue), CVS made further public representations how it protects PHI under HIPAA, as it claims to ODH as part of its agreement that it would do. This Notice covers the CVS defendant here as an Affiliated Covered Entity even though it is supposedly issued by "CVS Caremark, Inc.". Under that policy CVS states it will not use or disclose PHI for marketing purposes. Yet that was part of the purpose of the notice at issue – to advise persons, many of whom did not use CVS, to utilize CVS under the OhDAP program to obtain their HIV medications. That policy also states that "we will obtain your written authorization before using or disclosing your PHI for purposes other than those described in this Notice or as otherwise permitted by law." Yet no applicable law permitted CVS to send Plaintiffs and Class members a notice publicly disclosing their PHI as part of a haphazard identification code, which was not a specifically identified purpose in this Notice of Privacy Practices. Nor did CVS obtain any advance written authorization from Plaintiffs and Class members to do so or to provide this information to Fiserv, in further violation of this Notice, its agreement with ODH and Ohio law.

**ANSWER:**     Fiserv refers to the CVS Health "Notice of Privacy Practices" effective as of June 30, 2017, for the complete content thereof, and denies any allegations inconsistent therewith.  Fiserv denies any remaining allegations in Paragraph 25.

26.     In addition, all CVS related subsidiaries, divisions, and affiliates are currently subject to an FTC consent decree from *In the Matter of CVS Caremark Corporation*, FTC Case No. C-4259. This Consent Decree resulted from several other episodes where CVS was careless with consumers' PHI data. In the order implementing that consent decree, CVS agreed it would not in connection with marketing or promoting any product or service (which would include the services contracted with the ODH and offered to be provided to Plaintiffs and Class members) "the extent to which it maintains and protects the privacy, confidentiality, security or integrity of personal information collected from or about consumers." Yet in obtaining the contract at issue from ODH, such security and CVS' compliance with state and federal privacy laws was one of the representations CVS focused upon in connection with selling its services and obtaining access to the PHI in question as part of the OhDAP. In addition, CVS was required as part of the FTC Order to establish, implement and maintain, with an independent third party, a "comprehensive information security program that is reasonably designed to protect the security, confidentiality and integrity of personal information collected from or about consumers." CVS also was ordered to develop reasonable safeguards to "select and retain service providers capable of appropriately safeguarding personal information they receive" from CVS, and for those providers to implement and maintain such safeguards. Yet in connection with this particular breach, it appears CVS created program IDs that actually and directly referred to the medical condition of the consumer. CVS also made no effort to either test or quality control its mailings to ensure no PHI was publicly visible, or to prevent its vendors, including Fiserv, from using windowed envelopes that would disclose such information. The fact that Mr. Baker, the Chief Privacy Officer of CVS, and CVS' other statements to the media was simply that this breach was not "intentional", and that it would modify its procedures in place to ensure such an incident would not happen again, is significant evidence that Defendants' procedures – required to be in place under this FTC Order – were not adequate to protect the confidentiality of the PHI of Plaintiffs and Class members. Defendants' violations

of the above provisions of the FTC Order combined with the cavalier use of such a program code directly above a consumers' name and address and the decision to use a windowed envelope disclosing that information, is in abrogation of all such applicable laws and obligations. Such conduct was thus in violation of the standards and commitments imposed under the agreement with ODH and Ohio law, upon both CVS and its vendor Fiserv.

**ANSWER:** Fiserv refers to the cited FTC consent decree for the complete content thereof, and denies any allegations inconsistent therewith. Fiserv lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations against CVS in Paragraph 26. Fiserv denies any remaining allegations in Paragraph 26 directed to Fiserv and otherwise denies any remaining allegations in Paragraph 26.

27. Defendants also acted with a conscious disregard for the rights and safety of other persons that has a great probability of causing substantial harm, resulting in knowing conduct. Based on the representations, Codes of Conduct, agreements and orders set forth above, including the FTC Order, Defendants knew that it is unlawful and likely harmful to disclose patients' HIV status to the public, and that any persons whose PHI was disclosed were to be separately notified of that breach. In addition to CVS's representations about its compliance with state and federal laws as described above, CVS states in its "Notice of Privacy Practices," "We are required by law to protect the privacy of your PHI and to provide you with this Notice explaining our legal duties and privacy practices regarding your [Protected Health Information].... You have a right to be notified in the event there is a breach of your unsecured PHI as defined by HIPAA." https://www.cvs.com/content/patient-privacy (accessed June 5, 2018). Fiserv advertises its compliance as well: "From enrollment to payment, let Fiserv help you create, maintain and grow member engagement while adhering to the strongest risk and compliance standards, including HITRUST® CSF® certification." https://www.fiserv.com/customer-channel-management/output-solutions/healthcare-printing.aspx (accessed June 5, 2018). In addition, as alleged above CVS's Vendor Code of Conduct purports to require vendors, which would include Fiserv here, to ensure that their "use, disclosure, transmission, storage, and destruction of confidential information [is] in accordance with vendor/supplier contracts and applicable laws."

**ANSWER:** Fiserv denies that Defendants "acted with a conscious disregard for the rights and safety of other persons that has a great probability of causing substantial harm, resulting in knowing conduct" and denies that the remaining allegations in Paragraph 27 support such a conclusion. Fiserv admits that https://www.fiserv.com/customer-channel-management/output-solutions/healthcare-printing.aspx is on its website and refers to that link for the complete content thereof, and denies any allegations inconsistent therewith. Fiserv also admits that Paragraph 27

purports to quote and/or characterize the CVS Code of Conduct and other documents.  Fiserv refers

to those documents for the complete content thereof and denies any allegations inconsistent

therewith.  Fiserv denies any remaining allegations in Paragraph 27.

28.     Contrary to these obligations that Defendants either knew or reasonably should
have been aware of, after disclosing the PHI of over 6,000 Ohio residents, CVS hampered efforts
to remediate the damage by failing to notify affected individuals and the United States Department
of Health and Human Services, in violation of their own stated privacy policy and in violation of
45 C.F.R. §§ 164.400–414. One of the undersigned counsel sent CVS a letter advising CVS that it
had violated HIPAA, asking for verification of the corrective measures that CVS had taken to
ensure that breaches will not happen in the future, and demanding that CVS notify the affected
individuals. Mr. Baker, CVS's Chief Privacy Officer, acknowledged receipt of the letter and stated
that CVS was investigating this claim, and only later weakly stated in response to public inquiry
and outcry that its conduct was not "intentional" and would not happen again – of no relevance or
comfort to the thousands of individuals impacted by this breach. What's worse, and as further
evidence of the knowing nature of its wrongful act, in almost a year CVS did not communicate
further or notify the approximately 6,000 affected individuals or the U.S. Department of Health
and Human Services of this breach – even though its current merger partner Aetna, Inc., under
virtually identical circumstances, did so within days of learning of a similar breach. Defendants'
failure to provide a notification of this breach shows that it is knowingly attempting to cover up
this wrongdoing by ignoring it.

**ANSWER:**     Fiserv lacks knowledge or information sufficient to form a belief as to the

truth of the allegations against CVS in Paragraph 28.  Fiserv denies that CVS did not communicate

with the United States Department of Health and Human Services and refers to the

communications between CVS and the United States Department of Health and Human Services

for the complete content thereof.  Plaintiffs' counsel did not communicate with Fiserv until after

the filing of their original Complaint, and Fiserv accordingly denies any allegations in

Paragraph 28 directed to Fiserv.  Fiserv denies any remaining allegations in Paragraph 28.

29.     Defendants' conduct is especially egregious in this instance because it was directed
at a class of individuals historically subject to discrimination based upon their medical condition.
Although many would like to believe a lot has changed since the U.S. Supreme Court held in 1998
that HIV/AIDS was subject to protections of the Americans with Disabilities Act[4], persons living
with HIV and those at high risk of infection continue to battle for equal access to healthcare and
rights. In fact, in a 2009 survey by Lambda Legal, "nearly 63 percent of the respondents who had
HIV reported experiencing one or more of the following types of discrimination in health care:

---

[4] *Bragdon v. Abbott*, 524 U.S. 624 (1988).

being refused needed care; being blamed for their healthcare status; and/or a healthcare professional refusing to touch them or using excessive precautions, using harsh or abusive language, or being physically rough and abusive."[5] Of those surveyed, 19% reported being denied care altogether. As Caremark pointed out on its own website, if patients can't trust their physicians and insurers to protect their health information, they will be less likely to seek important and potentially lifesaving medical treatment.

**ANSWER:** Fiserv denies that "Defendants' conduct is especially egregious in this instance" and denies that the remaining allegations in Paragraph 29 support such a conclusion. Fiserv admits that Paragraph 29 purports to quote and/or characterize a Lambda Legal survey, Supreme Court opinion, and Caremark's website. Fiserv refers to the Lambda Legal survey, Supreme Court opinion, and Caremark's website for the complete content thereof and denies any allegations inconsistent therewith. Fiserv denies that the allegations in Paragraph 29 evidence that any of the Plaintiffs or any of the purported class members have suffered the injury alleged, and demands strict proof of any alleged injury(ies) or damages. Fiserv denies the remaining allegations in Paragraph 29.

30.     Persons living with HIV (and their families) are also regularly subjected to employment and housing discrimination. In the 2000s, the U.S. Equal Employment Opportunity Commission received 2,175 complaints of discrimination based on HIV, with complaints peaking in the last year of the survey, demonstrating a disturbing *upward* trend. And, a 2009 national survey conducted by the Kaiser Foundation also showed that only 21% of people were comfortable living with someone with HIV. There are also numerous reported lawsuits over instances in which individuals with HIV (including children) have been denied housing and equal access because of their HIV status.

**ANSWER:** Fiserv admits that Paragraph 30 purports to characterize a U.S. Equal Employment Opportunity Commission survey and a national survey conducted by the Kaiser Foundation. Fiserv refers to the U.S. Equal Employment Opportunity Commission survey and the Kaiser Foundation survey for the complete content thereof and denies any allegations inconsistent

---

[5]     https://www.lambdalegal.org/sites/default/files/publications/downloads/fs_hiv-stigma-and-discrimination-in-the-us_1.pdf, last accessed May 8, 2018. All statistics cited herein are taken from Lambda's report unless otherwise attributed.

therewith. Fiserv lacks knowledge or information sufficient to form a belief as to the truth of the allegations in the first and last sentences of Paragraph 30. Fiserv denies any remaining allegations in Paragraph 30.

31. It is also well known that HIV and AIDS disproportionately impacts minority groups such as the LGBT community and African Americans. According to AmFAR, gay and bisexual men accounted for 82% of the United States' 1.2 million people living with HIV, with African-Americans accounting for 45% of HIV diagnoses but only 12% of the general population.[6]

**ANSWER:** Fiserv admits that Paragraph 31 purports to characterize facts and statistics from AmFAR. Fiserv refers to AmFAR's website for the complete content thereof and denies any allegations inconsistent therewith. Fiserv denies that the allegations in Paragraph 31 evidence that any of the Plaintiffs or any of the purported class members have suffered the injury alleged, and demands strict proof of any alleged injury(ies) or damages. Fiserv lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 31.

32. The pervasive discrimination suffered by those with HIV or AIDS leads to a social stigma that results in significant harm, including a direct correlation to higher rates of depression, loneliness, and social isolation—and results in those suffering from (or at high risk of) the illness to avoid testing and treatment to avoid the negative consequences of a positive diagnosis. One meta-analysis of 119 studies "demonstrated that perceived interpersonal risks are associated with HIV disclosure and outlined evidence of associations with anxiety, fear and worry."[7] They may also run the risk of the loss of housing, relationships, and employment when their HIV status is revealed. A 2012 national survey by the Washington Post and the Kaiser Family Foundation showed that fewer than half of respondents would feel "very comfortable" working with someone who has HIV or AIDS, or having a teacher for their children who has HIV or AIDS. Only a third would feel "very comfortable" with having a roommate who is living with HIV, and fewer than a quarter would feel "very comfortable" having food prepared by someone who is living with HIV.[8] Such studies and analysis demonstrate that even if individuals living with HIV do not know and cannot show who may been made aware of their HIV status, acts such as at issue here increase stress and anxiety, and result in personal harm and injury in fact.

---

[6] http://amfar.org/About-HIV-and-AIDS/Facts-and-Stats/Statistics--United-States/, last accessed May 9, 2018.

[7] Michael Evangeli and Abigail L. Wroe, HIV Disclosure Anxiety: A Systematic Review and Theoretical Synthesis, AIDS Behavior (2017) 21:1–11, https://www.ncbi.nlm.nih.gov/pmc/articles/PMC5216111/pdf/10461_2016_Article_1453.pdf

[8] Washington Post and Kaiser Family Foundation, 2012 Survey of Americans on HIV/AIDS, https://kaiserfamilyfoundation.files.wordpress.com/2013/01/8334-f.pdf.

**ANSWER:** Fiserv admits that the allegations in Paragraph 32 purport to cite certain documents in order to draw generalizations about the extent to which persons with HIV may be subject to stigma, humiliation, mental anguish, embarrassment, and stress based on their HIV status. Fiserv denies that the allegations in Paragraph 32 evidence that any of the Plaintiffs or any of the purported class members have suffered the injury alleged, and demands strict proof of any alleged injury(ies) or damages. Fiserv lacks knowledge or information sufficient to form a belief as to the truth of the allegations in the first sentence of Paragraph 32. Fiserv denies the remaining allegations in Paragraph 32.

33. The State of Ohio, where Plaintiffs reside and where CVS has substantial operations, provides a right to privacy that encompasses unconsented medical information disclosures. "[I]t is for the patient—not some medical practitioner, lawyer or court—to determine what the patient's interests are with regard to personal confidential medical information." *Biddle v. Warren Gen. Hosp.*, 86 Ohio St. 3d 395, 408, 715 N.E.2d 518.528 (Ohio 1999); *see also Hageman v. Southwest Gen. Health Ctr.*, 119 Ohio St. 3d 185, 188-89, 893 N.E.2d 153, 156 (Ohio 2008) (applying the rule of *Biddle* to disclosures made by parties other than physicians or hospitals).

**ANSWER:** Fiserv lacks knowledge or information sufficient to form a belief as to where Plaintiffs reside or where CVS has "substantial operations." The first sentence in Paragraph 33 states a legal conclusion, to which no response is required. To the extent a response is required, Fiserv refers to the text of any relevant Ohio state statutes, regulations, or laws pertaining to the right to privacy and denies any allegations inconsistent therewith. The remaining allegations in Paragraph 33 purport to characterize Ohio court opinions and state legal conclusions to which no response is required. To the extent a response is required, Fiserv refers to the text of the cited Ohio court opinions and denies any allegations inconsistent therewith. Fiserv denies any remaining allegations in Paragraph 33.

34. In addition to the general protection against the unwanted or unauthorized disclosure of medical information and PHI under state law, and the statutory and regulatory protections against the disclosure of PHI pursuant to HIPAA, 42 U.S.C. § 1320d-6 and the HIPAA Privacy Rules at 45 C.F.R. § 164.500, *et seq.*, the State of Ohio has enacted legislation to

specifically protect HIV patients (and those at risk) in order to encourage testing and treatment. This legislation protects against the unauthorized disclosure of a person's HIV status such as the Defendants did here, pursuant to Ohio Rev. Code § 3701.243(A) ("no person or agency of state or local government that acquires the information while providing any health care service or while in the employ of a health care facility or health care provider shall disclose or compel another to disclose any of the following … (3) The identity of any individual diagnosed as having AIDS or an AIDS-related condition."); *see also Ohio* Rev. Code 3701.244(B) (A person or agency of state or local government that knowingly violates … division (A) of section 3701.243 … may be found liable in a civil action; the action may be brought by any individual injured by the violation."). In addition, applicable law requires companies to specifically identify to consumers who may have access to their PHI. Defendants have violated all of these laws. By taking the position Defendants were not obligated to notify either the U.S. Department of Health and Human Services or the affected consumers of what happened , even though they cannot deny a disclosure of PHI occurred, shows Defendants' wanton and conscious disregard of the rights, feelings and safety of such persons.

**ANSWER:** Fiserv admits that the State of Ohio has enacted Ohio Rev. Code § 3701.243. Fiserv lacks knowledge or information sufficient to form a belief as to why the State of Ohio enacted the legislation that Plaintiffs purport to characterize in Paragraph 34, including Ohio Rev. Code § 3701.243. The allegations in Paragraph 34 purport to characterize federal and Ohio state statutes and regulations and state legal conclusions to which no response is required. To the extent a response is required, Fiserv refers to the text of the relevant federal and Ohio state statutes and regulations for the complete content thereof and denies any allegations inconsistent therewith. Fiserv denies the allegations of the final sentence in Paragraph 34 and denies any remaining allegations in Paragraph 34.

35. The damages that result from the unauthorized disclosure of a person's HIV status are significant. For example, an Ohio court awarded damages of $6,000 for the inadvertent disclosure of a prisoner's HIV status to government employees, even though the plaintiff presented "no evidence as to the extent of his emotional distress." *Miller v. Ohio Dep't of Rehab. & Corr.*, No. 2016-00393-AD (Ohio Ct. Cl. Nov. 4, 2016).

**ANSWER:** Fiserv denies that the mailings at issue disclosed Plaintiffs' alleged HIV status to any unauthorized party, particularly based on Plaintiffs' continuing failure or refusal to identify a single unauthorized person to whom their alleged HIV status was actually disclosed, and further denies that Plaintiffs suffered any injury(ies) or damages as a result thereof. Fiserv refers

to the Ohio court decision for the complete content thereof, denies any allegations inconsistent therewith, and denies that the facts underlying that decision are analogous to the facts alleged in the Consolidated Amended Complaint. Fiserv denies any remaining allegations in Paragraph 35.

36.     In addition, Plaintiffs may be without adequate remedy at law, rendering equitable, injunctive and/or declaratory relief appropriate in that: (a) relief is necessary to inform the parties of their rights and obligations under the laws at issue herein; (b) damages may not adequately compensate them for the injuries suffered, nor may other claims permit such relief; (c) the relief sought herein in terms of correcting such practices and precluding the further use of glassine envelopes may not be fully accomplished by awarding damages; and (d) if the conduct complained of is not corrected, harm may continue to result to members of the general public.

**ANSWER:**     Fiserv denies the allegations in Paragraph 36.

37.     On personal knowledge, each of the Plaintiffs received the letter in question, publicly revealing their HIV status.

(a)     John Doe One feels that CVS has essentially handed a weapon to anyone who handled the envelope, giving them the opportunity to attack his identity or cause other harm to him. He is also experiencing significant distress at home from receiving a mailing that used his name, address, birthdate and PHI from an entity with whom he had no business connection. He is rightfully concerned that members of his local community have or will learn of his HIV status.

(b)     John Doe Two lives in a small town and fears the stigma that would result from the disclosure of his HIV status. The more people who know that he is living with HIV, the less safe he feels. In his town, many people still believe in "guilt by association," and thus his friends and family run the risk of being stigmatized just by being seen with him. He is concerned that people such as his postal delivery person now knows his HIV status, particularly since CVS forces him to obtain his HIV medications by mail order and he receives those medications at the same address. He is also experiencing significant distress based on the adverse consequences of a similar incident years ago.

(c)     John Doe Three lives in a small town where "everyone knows everyone." He does not publicly disclose his HIV status, but has friends and relatives who work for the U.S. Postal Service who would have seen this mailing and discovered his HIV status because of the Defendants' mailing. He is also experiencing significant distress as a result of this disclosure, including an understandable fear to leave his home, and has also experienced increased complications and health issues since this disclosure.

(d)     John Doe Four has taken great pains to keep his HIV status private for many years. As a result of the disclosure of his HIV status, Plaintiff has suffered, and continues to suffer, ongoing harm, including the loss of his medical privacy, the disclosure of highly personal information, mental, emotional, and physical distress including panic, anxiety, loss of sleep, loss of productivity, and time spent dealing with the fallout of the disclosure. Moreover, Plaintiff remains in imminent threat of future harm from Defendants because they continue to maintain his

PII and PHI but are not safeguarding it from unlawful disclosure in compliance with state and federal laws.

**ANSWER:** Fiserv denies that the mailings placed at issue "publicly reveal[ed]" Plaintiffs' HIV status or that anyone at the U.S. Postal Service saw "this mailing and discovered [any Plaintiff's] HIV status," particularly based on Plaintiffs' continuing failure or refusal to identify a single unauthorized person to whom their alleged HIV status was actually disclosed. Fiserv further denies that Plaintiffs have suffered any legally cognizable harm as a result of the mailings placed at issue. Fiserv lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 37.

## CLASS ALLEGATIONS

38.     This action is brought by the Plaintiffs both on behalf of themselves and on behalf of all other similarly situated persons pursuant to Rule 23 of the Federal Rules of Civil Procedure. The Plaintiffs seek to represent the following class ("Class"):

> All participants in OhDAP to whom Defendants provided information to an unauthorized recipient and/or sent a mailing in or about July or August 2017 in which the participant's name and the letters "HIV" were visible through the envelope window.

**ANSWER:** Fiserv admits that Plaintiffs are seeking to pursue a class action using the stated class definition. Fiserv denies that Plaintiffs can satisfy the requirements under Fed. R. Civ. P. 23, that class certification in this matter is appropriate, that there is a certifiable class, that Fiserv has engaged in any wrongful conduct, or that the putative class has experienced any legally cognizable harm. Fiserv denies any remaining allegations in Paragraph 38.

39.     The precise number and identity of Class members are unknown to the Plaintiffs but can be obtained from the records of Defendants. News reports have estimated the class number to be more than 6,000 persons.

**ANSWER:** Fiserv lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 39 as to what Plaintiffs know, do not know, or could obtain. Responding further, the allegation in Paragraph 39 regarding news reports is ambiguous, vague,

and without specific citations, and therefore Fiserv lacks knowledge or information sufficient to form a belief as to its truth. Fiserv denies any remaining allegations in Paragraph 39.

40.     Common questions of law and fact predominate over any questions affecting individual members of the Class. Such common legal and factual questions include the following:

(a)     Whether Defendants' conduct was tortious and violated the applicable standard of care;

(b)     Whether Defendants' conduct was unlawful, including in violation of the state and federal statutes and regulations cited above;

(c)     Whether the Class members are entitled to damages and the extent of those damages; and

(d)     Whether the Class members are entitled to injunctive or declaratory relief.

**ANSWER:**     Fiserv denies the allegations in Paragraph 40.

41.     The Plaintiffs' claims are typical of the claims of the Class members because similar mailings to those identified above were sent to Plaintiffs and every Class member.

**ANSWER:**     Fiserv denies the allegations in Paragraph 41.

42.     The Plaintiffs are willing and prepared to serve the Court and the proposed Class in a representative capacity. The Plaintiffs will fairly and adequately represent and protect the interests of the Class and have no interests adverse or antagonistic to or that materially and irreconcilably conflict with the interests of the other members of the Class. Based on the facts detailed above, the interests of the Plaintiffs are reasonably coextensive with those of absent Class members.

**ANSWER:**     Fiserv lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 42.

43.     The Plaintiffs have engaged the services of counsel who are experienced in complex class litigation and the issues raised in this Complaint who will vigorously prosecute this action, and who will assert and protect the rights of and otherwise adequately represent the rights of the Plaintiffs and absent Class members.

**ANSWER:**     Fiserv lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 43.

44.     Prosecuting separate actions by individual Class members would create a risk of inconsistent or varying adjudications with respect to individual Class members that would establish incompatible standards of conduct for Defendants.

22

**ANSWER:**     Fiserv denies the allegations in Paragraph 44.

45.     By disclosing the PHI in question without having first obtained consent to do so and sending similar mailings to thousands of people and later refusing to send notification thereof Defendants have acted or refused to act on grounds generally applicable to the Class, thereby making injunctive and declaratory relief appropriate respecting the Class as a whole.

**ANSWER:**     Fiserv denies the allegations in Paragraph 45.

46.     Because all Class members are seeking the same relief based on the same course of conduct by Defendants, the questions of law or fact common to Class members as set forth in this Complaint predominate over any questions affecting only individual members. Thus, a class action is superior to other available group-wide methods for fairly and efficiently adjudicating this controversy, to the extent necessary in order to maintain this action on behalf of the Class.

**ANSWER:**     Fiserv denies the allegations in Paragraph 46.

## CAUSES OF ACTION

### Count I

**Unauthorized, Unprivileged Disclosure to a Third-Party of Nonpublic Medical Information**

47.     The Plaintiffs repeat and re-allege all allegations as if fully incorporated and set forth herein.

**ANSWER:**     Fiserv repeats and re-alleges all answers as if fully incorporated and set forth herein.

48.     An individual's HIV status is a fact learned within the physician–patient relationship. A patient has the right to privacy of this information.

**ANSWER:**     Fiserv admits an individual's HIV status is a fact that may be learned within the physician-patient relationship, but denies the remaining allegations of the first sentence in Paragraph 48.  The second sentence in Paragraph 48 states a legal conclusion to which no response is required.  To the extent a response is required, Fiserv refers to federal and/or state law concerning the right to privacy of physician-patient information for the complete content thereof and denies any allegations inconsistent therewith.  Fiserv denies any remaining allegations in Paragraph 48.

23

49.     To be eligible for OhDAP, an applicant must submit "medical verification documents" confirming the applicant's HIV status. Therefore, a person's participation in OhDAP necessarily reflects facts about that person's HIV status obtained from documents protected by the physician–patient privilege. A patient has the right to privacy of this information.

**ANSWER:**     Paragraph 49 is based on Plaintiffs' construction of Ohio law and therefore states a legal conclusion to which no response is required.  To the extent a response is required, Fiserv denies the allegations in Paragraph 49.  Fiserv denies any remaining allegations in Paragraph 49.

50.     CVS disclosed the HIV status of Plaintiffs and Class members to Fiserv without the authorization of Plaintiffs and Class members.

**ANSWER:**     Fiserv denies the allegations in Paragraph 50.

51.     Defendants also disclosed the HIV status of Plaintiffs and Class members, without their authorization, to third-parties, including government employees of the United States Postal Service without authorization, which was not privileged to receive this information, and disclosed this information to others, including families, friends, roommates, landlords, neighbors, and complete strangers.

**ANSWER:**     Fiserv denies that it disclosed the HIV status of Plaintiffs and putative class members to any unauthorized party, particularly based on Plaintiffs' continuing failure or refusal to identify a single unauthorized person to whom their alleged HIV status was actually disclosed. Fiserv denies any remaining allegations in Paragraph 51.

52.     Defendants have not been authorized by any of the Plaintiffs or Class members to disclose the Plaintiffs' and Class members' HIV status to any of the above persons or the public.

**ANSWER:**     Fiserv denies that it disclosed Plaintiffs' and putative class members' HIV status to "any of the above persons" or the public and denies any remaining allegations in Paragraph 52.

53.     As a direct and proximate result of Defendants' actions, the Plaintiffs and Class members have suffered damages.

**ANSWER:**     Fiserv denies the allegations in Paragraph 53.

54.    The Plaintiffs, on behalf of themselves and all Class members, seek relief, including but not limited to damages, injunctive relief, declaratory judgment, and punitive damages in amounts according to proof at time of trial.

**ANSWER:**    Fiserv admits that Plaintiffs seek the relief asserted in Paragraph 54 but denies that Plaintiffs are entitled to such relief.  Fiserv denies any remaining allegations in Paragraph 54.

## Count II

### Violation of Ohio Rev. Code § 3701.243

55.    The Plaintiffs repeat and re-allege all of the allegations of the preceding Paragraphs as if fully incorporated and set forth herein.

**ANSWER:**    Fiserv repeats and re-alleges all of its answers of the preceding Paragraphs as if fully incorporated and set forth herein.

56.    At all times material herein Defendants have been subject to the requirements of § 3701.243. The information contained in the Notice was protected information because it contained "the identity of any individual diagnosed as having AIDS or an AIDS-related condition." Ohio Rev. Code Ann. § 3701.243(A)(3).

**ANSWER:**    Paragraph 56 is based on Plaintiffs' construction of Ohio law and therefore states a legal conclusion to which no response is required.  To the extent a response is required, Fiserv denies the allegations in Paragraph 56.

57.    Ohio law prohibits disclosing any record mentioned above to another person without written consent or without statutorily enumerated authorization. Ohio Rev. Code Ann. § 3701.243.

**ANSWER:**    Paragraph 57 is based on Plaintiffs' construction of Ohio law and therefore states a legal conclusion to which no response is required.  To the extent a response is required, Fiserv refers to Ohio Rev. Code Ann. § 3701.243 for the complete content thereof and denies any allegations inconsistent therewith.

58.    CVS knowingly disclosed the HIV status, including having AIDS or an AIDS-related condition, of Class members to Fiserv without these Class members' advance written authorization.

**ANSWER:** Fiserv denies the allegations in Paragraph 58.

59. Defendants also knowingly disclosed the HIV status, including having AIDS or an AIDS-related condition, of Class members, without their authorization, to the United States Postal Service without written authorization, which was not privileged to receive this information, and further potentially disclosed this information to others, including their families, friends, roommates, landlords, neighbors, and complete strangers.

**ANSWER:** Fiserv denies that it disclosed the HIV status, including AIDS or an AIDS-related condition, of Plaintiffs or putative class members to any unauthorized party, particularly based on Plaintiffs' continuing failure or refusal to identify a single unauthorized person to whom their alleged HIV status was actually disclosed. Fiserv denies any remaining allegations of Paragraph 59.

60. These disclosures were made in connection with the provision of health care services in this State. Defendants violated Ohio law by knowingly disclosing, without receiving advance authorization from the Plaintiffs or any Class members:

(1) The identity of any individual on whom an HIV test is performed; (2) The results of an HIV test in a form that identifies the individual tested; [or] (3) The identity of any individual diagnosed as having AIDS or an AIDS-related condition.

and without the required disclosures, in violation of Ohio Rev. Code § 3701.243(A)(1)-(3) and (E). The disclosed information was obtained while administering a state-run program, and providing a health care service, namely CVS's provision of pharmacy benefits management and pharmacy services to OhDAP and obtaining a contract for the sale of such services from ODH.

**ANSWER:** Fiserv denies the allegations in Paragraph 60.

61. Based on the host of orders, laws, codes of conduct, and agreements set forth above, the Defendants knew about the laws governing confidentiality of HIV information in Ohio and federal law, and they knowingly committed the actions described above, which violated Section 3701.243(A).

**ANSWER:** Fiserv denies the allegations in Paragraph 61.

62. As a direct and proximate result of Defendants' actions, the Plaintiffs and Class members have suffered damages.

**ANSWER:** Fiserv denies the allegations in Paragraph 62.

63. The Plaintiffs and Class members have a private right of action for Defendants' violations of this law. Ohio Rev. Code § 3701.244(B).

**ANSWER:**    Fiserv denies the allegations in Paragraph 63.

64.    The Plaintiffs and Class members seek relief, including but not limited to damages, punitive damages, injunctive relief, declaratory judgment, and attorneys' fees and costs.

**ANSWER:**    Fiserv admits that Plaintiffs seek the relief asserted in Paragraph 64 but denies that Plaintiffs are entitled to such relief.  Fiserv denies any remaining allegations in Paragraph 64.

### Count III

**Violation of Ohio Insurance Information and Privacy Protection Act**

**Ohio Rev. Code § 3904.01, *et seq.***

65.    Plaintiffs repeat and re-allege the allegations of all Paragraphs as if fully incorporated and set forth herein.

**ANSWER:**    Fiserv repeats and re-alleges all of its answers of the preceding Paragraphs as if fully incorporated and set forth herein.

66.    Plaintiffs' and Class Members' HIV-medication information was "personal information" as defined under Ohio Rev. Code § 3904.01(R) because it was "individually identifiable information gathered in connection with an insurance transaction from which judgments can be made about and individual's character, habits, avocations, finances, occupation, general reputation, credit, health or any other personal characteristics."

**ANSWER:**    Paragraph 66 is based on Plaintiffs' construction of Ohio law and therefore states a legal conclusion to which no response is required.  To the extent a response is required, Fiserv denies the allegations in Paragraph 66.  Fiserv denies any remaining allegations in Paragraph 66.

67.    Defendants disclosed without authorization or legal basis personal information regarding Plaintiffs and Class Members to third-parties that was collected or received in connection with an insurance transaction, in violation of Ohio Rev. Code § 3904.13. Plaintiffs and Class Members have been harmed by Defendants' willful and unauthorized disclosures of their personal information.

**ANSWER:**    The first sentence in Paragraph 67 states a legal conclusion to which no response is required.  To the extent a response is required, Fiserv denies the allegations in the first

27

sentence in Paragraph 67.  Fiserv denies that Defendants disclosed personal information regarding

Plaintiffs and putative class members to any unauthorized party, particularly based on Plaintiffs'

continuing failure or refusal to identify a single unauthorized person to whom their personal

information actually disclosed, and accordingly further denies that Plaintiffs and putative class

members suffered any injury in fact as a result thereof.  Fiserv denies any remaining allegations in

Paragraph 67.

68.     Plaintiffs and Class Members seek relief under Ohio Rev. Code § 3904.21, including but not limited to, actual damages, injunctive relief, and attorneys' fees and costs.

**ANSWER:**     Fiserv admits that Plaintiffs seek the relief asserted in Paragraph 68 but

denies that Plaintiffs are entitled to such relief.  Fiserv denies any remaining allegations in

Paragraph 68.

**Count IV**

**25 Declaratory Relief**

**28 U.S.C. § 2201**

69.     Plaintiffs repeat and re-allege the allegations of all Paragraphs as if fully incorporated and set forth herein.

**ANSWER:**     Fiserv repeats and re-alleges all of its answers of the preceding Paragraphs

as if fully incorporated and set forth herein.

70.     An actual controversy has arisen and now exists between Plaintiffs and the putative Class on the one hand, and Defendants on the other, concerning Defendants' failure to protect Plaintiffs' and Class Members' PHI in accordance with applicable state and federal regulations and the agreements between the parties. Plaintiffs and the Class Members contend that Defendants failed to maintain adequate and reasonable privacy practices to protect their PHI while on the other hand, Defendants contends they have complied with applicable state and federal regulations and its agreements with Plaintiffs and Class Members to protect their PHI.

**ANSWER:**     Fiserv denies that Plaintiffs have alleged an actual controversy to support

declaratory relief that purportedly is independent of the other claims they seek to pursue.  Fiserv

admits that Plaintiffs purport to contend the allegations in the second sentence of Paragraph 70.

Fiserv further admits that each Defendant contends it has complied with applicable state and federal regulations.  Fiserv denies the remaining allegations in Paragraph 70.

71.     Accordingly, Plaintiffs and Class Members are entitled to and seek a judicial determination of whether Defendants have performed, and are performing, the medical privacy practices and obligations necessary to protect and safeguard Plaintiffs' and Class Members' PHI from further unauthorized access, use and disclosure or insecure disposal.

**ANSWER:**   Fiserv denies that Plaintiffs are entitled to seek declaratory relief independent of the other claims they seek to pursue.  Fiserv denies the remaining allegations in Paragraph 71.

72.     A judicial determination of the rights and responsibilities of the parties over Defendants' medical privacy practices is necessary and appropriate at this time so that: (a) the rights of the Plaintiffs and the Class may be determined with certainty for purposes of resolving this action; and (b) so that the parties will have an understanding of Defendants' obligations in the future given their continuing legal obligations and ongoing relationship with Plaintiffs and Class Members.[9]

**ANSWER:**   Fiserv denies that a judicial determination of the rights and responsibilities of the parties over Defendants' medical privacy practices is necessary and appropriate at this time.  Fiserv admits that Plaintiffs purportedly seek to reassert claims previously dismissed by this Court, but denies that Plaintiffs are entitled to such relief under those claims.  Fiserv denies any remaining allegations in Paragraph 72.

---

[9] In their previous complaints, Plaintiffs asserted claims for violation of the Fair Credit Reporting Act, breach of confidentiality, breach of fiduciary duty, negligence, negligence *per se*, breach of contract, invasion of privacy, and intentional infliction of emotional distress. The Court dismissed these claims. Plaintiffs reassert these claims here, and incorporate their previous complaints, only to the extent necessary to preserve these claims for appeal. *See Hayward v. Cleveland Clinic Found.*, 759 F.3d 601, 616–18 (6th Cir. 2014) (holding that a plaintiff generally need not replead dismissed claims to preserve them for appeal).

## AFFIRMATIVE DEFENSES

Fiserv asserts the following affirmative defenses in response to the Consolidated Amended Complaint.  By pleading these affirmative defenses, Fiserv does not assume the burden of proving any fact, issue, or element of a claim or defense where such burden properly belongs to Plaintiffs.

1.      The Consolidated Amended Complaint fails to state a claim upon which relief can be granted.

2.      Fiserv, Inc. is not a proper party to this action.

3.      To the extent that the requirements under 28 U.S.C. § 1391 are not satisfied, venue is improper in this action.

4.      This action may not be maintained as a class action because the requirements of Rule 23 of the Federal Rules of Civil Procedure are not met in this case.

5.      Plaintiffs' claims are barred or limited to the extent Plaintiffs have failed to mitigate any damages they allege they suffered.

6.      To the extent that Plaintiffs have consented to the mailings at issue, Plaintiffs' claims may be barred in whole or in part by the doctrines of consent and acquiescence, waiver, and estoppel.

7.      To the extent that another party is responsible for all or part of Plaintiffs' alleged damages, if any, Plaintiffs are barred from recovering from Fiserv, in whole or in part.

8.      Plaintiffs are barred from recovering any relief sought in the Consolidated Amended Complaint to the extent that Fiserv's alleged conduct was not the actual and proximate cause for Plaintiffs' alleged damages, if any.

9.      Plaintiffs are barred from recovering any relief sought in the Consolidated Amended Complaint to the extent that they have not suffered any legally cognizable damages.

10.     Without conceding that this is a proper class action, and without conceding that any putative class member is similarly situated to Plaintiffs, and reserving all defenses thereto, Fiserv reasserts each and every defense set forth within with respect to each and every putative class member whom Plaintiffs contend are covered by and/or entitled to relief in this action.

## **RESERVATION OF RIGHTS**

Fiserv reserves the right to amend and/or supplement this Answer, including, without limitation, to assert additional defenses (statutory or in common law), as may be supported by evidence adduced during the investigation and discovery for this matter.

## **JURY DEMAND**

Fiserv hereby requests a trial by jury on all triable claims.

## **PRAYER FOR RELIEF**

WHEREFORE, Fiserv respectfully requests that this Court deny the relief requested in the Consolidated Amended Complaint, enter judgment in favor of Fiserv, award reasonable costs and attorneys' fees to Fiserv to the extent permitted by law, and grant Fiserv such other and further relief as the Court deems just and proper.

Dated:  March 29, 2019

                                    Respectfully submitted,

                                    */s/ John H. Mathias, Jr.*

                                    James B. Hadden (0059315), Trial Attorney
Murray Murphy Moul + Basil LLP
1114 Dublin Road
Columbus, OH 43215
Telephone: 614.488.0400
Facsimile: 614.488.0401
E-mail: hadden@mmmb.com

John H. Mathias, Jr. (admitted *pro hac vice*)
David M. Kroeger (admitted *pro hac vice*)
Megan B. Poetzel (admitted *pro hac vice*)
Jenner & Block
353 N. Clark Street
Chicago, IL 60654
Telephone: 312.222.9350
Facsimile: 312.527.0484
E-mail:jmathias@jenner.com
dkroeger@jenner.com
mpoetzel@jenner.com

*Counsel for Defendants Fiserv, Inc. and Fiserv Solutions, LLC*